UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL REEVES,

                Plaintiff,

        -against-

UNITED STATES OF AMERICA; CITY OF
NEW YORK; CITY OF NEW YORK POLICE
DEPARTMENT,

                Defendants.

---

ORDER OF DISMISSAL

26 Civ. 0930 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Michael Reeves, who is appearing *pro se*, brings this action under 42 U.S.C.

§ 1983, alleging that Defendants violated his rights under the Fourth Amendment. He also asserts

that Defendants violated his rights under the Administrative Procedure Act ("APA"), the Freedom

of Information Act ("FOIA"), and state public records laws. By order dated March 30, 2026, the

court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment

of fees. The Court dismisses this action for the reasons set forth below.

## I.    BACKGROUND

Plaintiff, who provides a California mailing address for himself but states that he resides

in New York, brings this action against the United States of America, the City of New York, and

the New York City Police Department ("NYPD"). Plaintiff asserts that he "has been subjected to

non-stop surveillance by unknown federal, state, and local agencies for the past several years,

starting first in New York City, following through several boroughs and states." (ECF 1, at 1.)

He further claims that "multiple agencies have acknowledged the existence of intelligence records"

about him but have "consistently failed to release these records or provide justification for

withholding them." (*Id.*)

The following facts are drawn from the complaint.[1]  In February 2023, while Plaintiff was residing in New York City and Brooklyn, he "first became aware of persistent surveillance, including aerial surveillance by aircraft." (*Id.* at 2 (emphasis omitted).)  Plaintiff "fled from state to state" to avoid the surveillance, but it continued across "multiple jurisdiction[s]" including locations in New Jersey, Baltimore, Washington, D.C., Virginia, North Carolina, Ohio, Illinois, Memphis, Nevada and California. (*Id.*)  Plaintiff maintains that he has been subjected to "over three years of continuous surveillance" at his residence and while traveling throughout the country. (*Id.*)

Plaintiff alleges that he has been "informed and has discovered" the existence of "criminal intelligence records" about him in Illinois, New Jersey, New York, North Carolina, and California. (*Id.*)  In November 2025, Plaintiff submitted public records requests to the City and County of San Diego, seeking "all records related to criminal intelligence and surveillance" on him. (*Id.* at 2–3.)  According to Plaintiff, unspecified "Defendants" acknowledged the existence of such records, but refused to release them, "citing security concerns and national intelligence issues." (*Id.* at 3.)  In January 2026, Plaintiff allegedly discovered that "similar records have been identified in at least 10 states." (*Id.*)

Plaintiff asserts that his Fourth Amendment rights have been violated by the "persistent surveillance" of his home. (*Id.*)  He further alleges that unspecified Defendants have violated state open records laws and the federal FOIA when they "unlawfully withheld documents related to Plaintiff's surveillance and criminal intelligence files." (*Id.* at 4.)  He also asserts that "[i]f any

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are in the complaint unless noted otherwise.

federal agencies are involved in this surveillance and record maintenance," then those agencies have violated the APA. (*Id.*)

Plaintiff seeks preliminary and permanent injunctive relief directing Defendants to, among other things, "immediately release the requested records." (*Id.* at 5.)

Plaintiff attaches to the complaint copies of various public records requests he submitted to city or state agencies in San Diego, California; Greensboro, North Carolina; Chicago, Illinois; Orange County, California; and Los Angeles, California; as well as to the New York State Department of Health; the New York City Human Resources Administration; the New York City Police Department; and the New York City Department of Social Services.

On February 20, 2026, Plaintiff filed a "Motion for Global Disclosure of All Related Surveillance And Criminal Intelligence Records" in which he requests that the Court issue an order "compelling defendants to disclose all related warrants, surveillance authorization, and criminal intelligence records concerning the Plaintiff, including preservation of all such records." (ECF 11, at 1.)

## II.    STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d

3

471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

## III.    PLAINTIFF'S CLAIMS ARE DISMISSED

### A.    Claims against the NYPD

The Court must dismiss Plaintiff's claims against the NYPD because agencies of the City of New York are not entities that can be sued. *See* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Edwards v. Arocho*, 125 F.4th 336, 354 (2d Cir. 2024) ("A plaintiff cannot bring a claim against a municipal agency that does not have the capacity to be sued under *its municipal charter*."); *see also Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City."); *Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The

4

Court therefore dismisses Plaintiff's claims against the NYPD for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

In light of Plaintiff's *pro se* status, the Court will construe any allegations he asserts against the NYPD as being asserted against the City of New York, which is also a named defendant in this action.

## B.     Claims against the United States

The Court must dismiss Plaintiff's claims against the United States under the doctrine of sovereign immunity. This doctrine bars federal courts from hearing all suits against the federal government except where sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Examples of waivers of sovereign immunity include the Federal Tort Claims Act ("FTCA") and the APA. Plaintiff's claims under the APA are addressed below.[2] To the extent Plaintiff is asserting claims against the United States that fall outside the scope of those waivers—such as federal constitutional claims—the Court dismisses those claims under the doctrine of sovereign immunity, and consequently, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

The APA, which Plaintiff references, provides a limited waiver of sovereign immunity, allowing for judicial review of a federal agency's administrative action. *See* 5 U.S.C. §§ 702, 704. Plaintiff does not state a claim under the APA, however, because he alleges no facts suggesting that he is seeking judicial review of a federal agency's final administrative action. The Court

---

[2] The FTCA provides for a waiver of sovereign immunity for certain claims for damages arising from the tortious conduct of federal officers or employees acting within the scope of their office or employment. *See* 28 U.S.C. §§ 1346(b)(1), 2680. A plaintiff must comply with the FTCA's procedural requirements before a federal court can entertain an FTCA claim. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999), *abrogated on other grounds*, *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). Because Plaintiff does not reference the FTCA, does not seek damages, and alleges no facts suggesting that he has complied with the FTCA's procedural requirements, the Court declines to construe the complaint as asserting claims under the FTCA.

therefore dismisses Plaintiff's APA claims against the United States under the doctrine of sovereign immunity, and consequently, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

## C.    Fourth Amendment claims

Plaintiff alleges that he has been subjected to "persistent surveillance" including "aerial surveillance by aircraft." (ECF 1, at 2.) The Court understands this allegation as an attempt to assert a claim that the City of New York, the only viable defendant named in the complaint, violated his right under the Fourth Amendment to be free from unreasonable searches.

"The Supreme Court has articulated two tests to determine when a search occurs within the meaning of the Fourth Amendment." *United States v. McKenzie*, 13 F.4th 223, 231 (2d Cir. 2021). Under the first test, a search occurs "when the Government obtains information by physically intruding on persons, papers, or effects." *Id.* at 231–32 (citing *Florida v. Jardines*, 569 U.S. 1, 5 (2013)). The second test forbids warrantless searches "that violate a person's reasonable expectation of privacy." *Id.* at 232 (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)). To determine the legitimacy of a privacy expectation, courts ask two questions: "first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?" *California v. Ciraolo*, 476 U.S. 207, 211 (1986). Searches based on observation of objects in plain view are not protected by the Fourth Amendment. *McKenzie*, 13 F.4th at 232 (citing cases).

Here, Plaintiff does not allege sufficient facts to state a Fourth Amendment claim. His vague allegations of "persistent surveillance, including aerial surveillance by aircraft," even if accepted as true, do not suggest that any identifiable defendant intruded on his person, papers, or effects, or violated a reasonable expectation of privacy. *See Ciraolo*, 476 U.S. at 215 (holding that the Fourth Amendment does not prohibit police officers from "traveling in the public airways" at

6

an altitude of 1000 feet "to observe what is visible to the naked eye"); *see also Florida v. Riley*, 488 U.S. 445, 448-51 (1989) (holding that surveillance involving a helicopter flying over property at 400 feet and looking into a greenhouse on an individual's property did not violate the Fourth Amendment).

Moreover, when a plaintiff sues a municipality, such as the City of New York, under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under . . . section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

Because Plaintiff's allegations do not suggest a constitutional violation, he does not state a viable claim against the City of New York. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that absent an underlying constitutional violation, there can be no municipal liability under *Monell*). Moreover, even if Plaintiff had provided facts suggesting a violation of his constitutional rights, he has not alleged that the City has a policy, custom, or practice that was the cause of his injury. Accordingly, the Court dismisses Plaintiff's Fourth Amendment claim for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## D.      Claims under the Freedom of Information Act

Plaintiff asserts that his rights under the FOIA have been violated. (*See* ECF 1, at 4.) The FOIA, 5 U.S.C. § 552, provides members of the public a right of access to some information from federal executive agencies. Federal courts have jurisdiction to enforce this right if a requester can show that "an agency has (1) 'improperly;' (2) 'withheld;' (3) 'agency records.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)). "Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989).

For requested materials to qualify as "agency records," two requirements must be satisfied: (i) "an agency must 'either create or obtain' the requested materials," and (ii) "the agency must be in control of the requested materials at the time the FOIA request is made." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 479 (2d Cir. 1999).

Before seeking judicial review, a FOIA applicant must exhaust administrative remedies by completing the administrative appeal process. 5 U.S.C. § 552(a)(6)(A)(i)-(ii); *see Sloman v. U. S. Dep't of Justice*, 832 F. Supp. 63, 65-66 (S.D.N.Y. 1993). The exhaustion requirement allows the targeted agency to correct its own errors, which obviates unnecessary judicial review. *See McKart v. United States*, 395 U.S. 185, 193-94 (1969); *New York Times Co. v. United States Dep't of Labor*, 340 F. Supp. 2d 394, 398 (S.D.N.Y. 2004) ("[P]rior to judicial review, the [plaintiff] must exhaust h[is] administrative remedies.").

The FOIA establishes the following administrative process:

Each agency, upon any request for records . . . shall  (i) determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of – (I) such determination and the reasons therefor[.]

8

5 U.S.C. § 552(a)(6)(A)(i); *see* 28 C.F.R. § 16.6(b), (c). If the request is denied, the requester may appeal the adverse determination to the head of the agency within 90 days. 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa).

Plaintiff's FOIA claims fail for a number of reasons. First, the only proper defendant in a FOIA action is the federal agency responsible for retention of the requested documents. *See Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 546 (2d Cir. 2016) ("[T]he FOIA applies only to federal agencies."). Here, Plaintiff does not name as a defendant, or even identify, the federal agency responsible for retention of the documents he is seeking. Second, the complaint does not state the material Plaintiff seeks, nor does it contain any facts suggesting that those materials are considered "agency records" under the FOIA. Third, to the extent Plaintiff filed a proper FOIA request with a federal agency, he alleges no facts suggesting that those records were withheld and that he exhausted his administrative remedies. The Court therefore dismisses Plaintiff's claims under the FOIA for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## E.    Claims under state law

Plaintiff also appears to assert claims against the City of New York under New York's Freedom of Information Law ("FOIL"). A federal district court can consider state law claims either under its diversity of citizenship jurisdiction or its supplemental jurisdiction. Plaintiff does not allege facts demonstrating that the court has diversity of citizenship jurisdiction to consider these state law claims. To establish diversity jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that the plaintiff and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). "An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Johnson v. Smithsonian*, 4 F. App'x 69, 70 (2d Cir. 2001) (citing *Palazzo v. Corio*, 232 F.3d 88, 42 (2d Cir. 2000)). Domicile is "the place where

9

a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998). In addition, the plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted).

Here, Plaintiff indicates that both he and the City of New York are citizens of the State of New York, precluding complete diversity of citizenship.[3] Moreover, Plaintiff alleges no facts demonstrating that his FOIL claims (or any other state law claims) against the City of New York are worth more than the $75,000 jurisdictional threshold. The Court therefore lacks diversity of citizenship jurisdiction to consider Plaintiff's state law claims.

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which

---

[3] Plaintiff did not provide his address in the complaint. However, in a letter that he submitted with the complaint, Plaintiff provided the court with a California mailing address for an entity named "Prose Justice," but stated that his "home address," an apartment located in New York, New York, "will remain unchanged." (ECF 7, at 1.) Thus, despite his California mailing address, Plaintiff appears to be domiciled in New York.

district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## IV.    LEAVE TO AMEND IS DENIED

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because nothing in the complaint suggests that Plaintiff could allege facts curing the deficiencies identified above, the Court declines to grant Plaintiff leave to amend his complaint.

## V.    CONCLUSION

The Court dismisses the complaint under the doctrine of sovereign immunity, for lack of subject matter jurisdiction, and for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 12(h)(3).

The Court denies Plaintiff's "Motion for Global Disclosure" (ECF 11) as moot. The Clerk of Court is directed to terminate the motion pending at ECF 11.

The Court declines to exercise supplemental jurisdiction of Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter judgment in this action.

SO ORDERED.

Dated:    AP       2026
New York, New York

_George B. Daniels_
GEORGE B. DANIELS
United States District Judge

11